IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| RPOST HOLDINGS, INC., | § | |
| RPOST COMMUNICATIONS LIMITED, | § | |
| and RMAIL LIMITED, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 2:12-CV-510 |
| | § | |
| CONSTANT CONTACT, INC., | § | |
| REGISTER. COM, INC., | § | |
| SYSCO CORP., | § | |
| BEST BUY STORES, L.P., | § | |
| YAHOO! INC., and | § | JURY TRIAL DEMANDED |
| NETWORK SOLUTIONS, LLC, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT, OR IN THE ALTERNATIVE, STAY LITIGATION PENDING
DETERMINATION OF STATE COURT AND BANKRUPTCY COURT ACTIONS**

## I.    INTRODUCTION

Defendants Constant Contact, Inc., Register.com, Inc., Sysco Corp., Best Buy Stores, L.P., Yahoo! Inc., and Network Solutions, LLC (collectively, "Defendants") respectfully move to dismiss this case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b), or to stay this case pending resolution of the ownership issues in the California courts.[1]  The assets of plaintiffs RPost Communications Limited ("RComm") and RMail Limited ("RMail"), including the Asserted Patents, are disputed in two California state court cases, two Chapter 13 federal bankruptcy cases, and adversary proceedings in these bankruptcy cases, including shareholder derivative actions (collectively, the "California Actions").[2]  The ownership of each of the Asserted Patents is in dispute in at least one of the California Actions.

---

[1]  Plaintiffs sued here several other defendants asserting the same patents ("the Asserted Patents").  *See, e.g.*, *RMail Ltd. v. Amazon.com, Inc.*, No. 2:10-cv-258-JRG (consolidating other cases) ("*Amazon* Case"); *RPost Holdings Inc. v. Epsilon Data Management, LLC*, No. 2:12-cv-00511 ("*Epsilon* Case"); *RPost Holdings Inc. v. Experian PLC* , No. 2:12-cv-00513; *RPost Holdings, Inc. v. StrongMail Systems, Inc.*, No. 2:12-cv-00515; *RPost Holdings, Inc. v. Vocus, Inc.*, No. 2:12-cv-00516; *RPost Holdings, Inc. v. Infogroup, Inc.*, No. 2:12-cv-00517 ("*Infogroup* Case"); *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 2:12-cv-00683 ("*Docusign Customer* Case").  Certain defendants have also filed similar motions to dismiss or stay.  (*See, e.g.*, *Epsilon* Case, D.I. 18.)

[2]  **State court cases**: *Barton v. RPost Int'l Ltd.*, No. YC061581 (Cal. Super., Rice, J.) (compl. filed Jan. 29, 2010) ("Barton 581 Case"); *Barton v. RPost Int'l Ltd.*, No. YC065259 (Cal. Super., Rice, J.) (compl. filed July 28, 2011) ("Barton 259 Case").

**Lead bankruptcy cases**: *In re Zafar David Khan*, No. 2:13-bk-19713-VZ (Bankr. C.D. Cal., Zurzolo, J.) ("Khan Bankruptcy Case"); *In re Terrance Alexander Tomkow*, No. 2:13-bk-19712-WB (Bankr. C.D. Cal., Brand, J.) ("Tomkow Bankruptcy Case") (collectively, "California Bankruptcy Cases").

**Adversary proceedings in bankruptcy cases**: *Burke v. Khan*, No. 2:13-ap-01773-VZ (Bankr. C.D. Cal., Zurzolo, J.) ("Khan Shareholder Derivative Action"); *Burke v. Tomkow*, No. 2:13-ap-01774-WB (Bankr. C.D. Cal., Brand, J.) ("Tomkow Shareholder Derivative Action") (collectively, "Shareholder Derivative Actions"); *Barton v. Khan*, No. 2:13-ap-01752-VZ (Bankr. C.D. Cal., Zurzolo, J.) ("Khan Barton Adversary Proceeding"); *Barton v. Tomkow*, No. 2:13-ap-01751-WB (Bankr. C.D. Cal., Zurzolo, J.) ("Tomkow Barton Adversary Proceeding") (collectively, "Barton Adversary Proceedings").

Specifically, the plaintiffs in the California Actions allege the transfers of the Asserted Patents to RMail and RComm were fraudulent.

This Court is obligated to evaluate subject matter jurisdiction at any time in the case. Standing is required for this Court to have subject matter jurisdiction, and it is a plaintiff's burden to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing must be established as of the date the complaint is filed; a plaintiff cannot cure standing post-filing. Until and unless the California Actions are resolved in Plaintiffs' favor, Plaintiffs cannot "demonstrate that they held enforceable title to the patent *at the inception of the lawsuit*," as they must to establish standing and for this Court to have subject matter jurisdiction. *Paradise Creations, Inc. v. U V Sales, Inc.*, 315 F.3d 1304, 1309-10 (Fed. Cir. 2003). Accordingly, Plaintiffs cannot meet their burden to prove they now have, and have had since the inception of this case, the requisite standing to maintain an action for patent infringement. *Id.* The controlling law is unequivocal:

> If the original plaintiff lacked Article III initial standing, the suit *must* be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit.

*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (emphasis added) (citation and internal quotation marks omitted). Because Plaintiffs cannot establish standing, this case "*must*" be dismissed. *Id.*

The sole available alternative under the controlling law, as this Court ordered in other cases involving the same Plaintiffs and both Asserted Patents and related patents, is a stay of this case pending resolution of the California Actions. The Court previously recognized that the California Actions "may have significant and substantive effects on the Plaintiffs' posture" in this case and "the consequences and foreseeable ramifications of [the Pending California

Actions] create a material risk that the time and resources of both the parties and this Court could be wasted." *Amazon* Case, D.I. 545 at 2 (staying consolidated case for ninety days).  The case should be stayed because: (1) this case is in its earliest stages;[3] (2) the resolution of the state law ownership issues in the California Actions may moot this case; (3) entry of a stay will reduce the burden of litigation on the parties and the Court; and (4) denial of a stay will unduly prejudice Defendants by subjecting them to multiple lawsuits.

## II.    STATEMENT OF ISSUES

There are two issues for the Court to decide.  First, whether in light of the disputed and competing claims over ownership of the Asserted Patents, Plaintiffs are unable to meet their burden to establish standing for patent infringement and thus this case should be dismissed without prejudice for lack of subject matter jurisdiction.  Second, assuming the Court is not inclined at this time to dismiss this case for lack of subject matter jurisdiction, whether it is consistent with judicial economy and the interests of justice to stay this case pending resolution of the California Actions in which the ownership of the Asserted Patents is in dispute.

---

[3]  Plaintiffs originally sued only Constant Contact for patent infringement in this particular case. (D.I. 1.)   After Constant Contact filed a motion to dismiss rather than answer Plaintiffs' complaint, Plaintiffs filed a retaliatory amended complaint not only against Constant Contact, but also against its customers and/or business partners.  (D.I. 16.)   Plaintiffs filed similar retaliatory amended complaints in other cases wherein motions to dismiss were filed (but not in cases where defendants chose to just answer the original complaint).  (*See, e.g.*, *Docusign Customer* Case, D.I. 1, 6 & 11; *Infogroup* Case, D.I. 1, 9 & 12.)   Despite filing the Amended Complaint in this action on February 11, 2013 (D.I. 16), Plaintiffs did not complete service on the newly named customer defendants until September 4, 2013.  (D.I. 56.)

### III. FACTUAL BACKGROUND

#### A. The Asserted Patents

Plaintiffs assert the following five patents against Defendants: United States Patent Nos. 6,182,219 ("the '219 patent"); 7,966,372 ("the '372 patent"); 8,161,104 ("the '104 patent"); 8,209,389 ("the '389 patent"); and 8,224,913 ("the '913 patent") (collectively, the "Asserted Patents"). Plaintiffs allege Plaintiff RComm is the owner of the '372, '104, '389, and '913 patents and Plaintiff RMail is the owner of the '219 patent. (D.I. 16 at ¶¶ 2, 3.) Plaintiffs further allege plaintiff RPost Holdings is the exclusive licensee of the Asserted Patents. (*Id.* at ¶ 4.)

#### B. The Pending California Actions

##### 1. The Barton 581 Case

On January 29, 2010, Mr. Barton, a substantial shareholder and founder of RPost International, brought an action for fraud and breach of fiduciary duty against, among other defendants, RPost International, RPost, Inc., Mr. Khan and Dr. Tomkow. *Barton v. RPost Int'l Ltd.*, No. YC061581 (Cal. Super., Rice, J.) (Compl. filed Jan. 29, 2010) ("Barton 581 Case") (Ex. A.)[4] On August 30, 2013, following a trial, the Court entered final judgment in favor of Mr. Barton and against RPost International, Mr. Khan and Dr. Tomkow, awarding Mr. Barton over $3.8 million in compensatory and emotional distress damages. (Ex. B at 2.) In addition, the Court found the actions of Mr. Khan and Dr. Tomkow "were undertaken with malice, fraud and oppression" and awarded Mr. Barton punitive damages from both Mr. Khan and Dr. Tomkow. (*Id.* at 2-3.)

---

[4] All references to "Ex." are to the concurrently filed Declaration of Richard G. Frenkel in Support of Defendants' Joint Motion to Dismiss Plaintiffs' Amended Complaint, or in the Alternative, Stay Litigation Pending Determination of State Court and Bankruptcy Court Actions.

During an August 30, 2013 hearing, the Court denied Mr. Barton's request to add RMail and RComm as judgment debtors, <u>without prejudice</u>.  The Court found that RMail and RComm were not controlling the litigation, and thus in that procedural context, the judgment should be entered against only Mr. Khan, Dr. Tomkow, and RPost International.   (Ex. C at 55-56.) However, the Court noted that in the event Mr. Barton learns of new information during the upcoming judgment debtor exam, for example, regarding ownership of RMail and RComm, Mr. Barton may file a post-judgment motion adding these parties as debtors.  (*Id.* at 60.)  The Court also did not moot the Barton 259 Case, in which the transfers of the Asserted Patents are alleged to be fraudulent, and noted that it would revisit the issue of fraudulent transfers if Mr. Barton is unable to collect on his judgment and feels that it is due to a fraudulent conveyance.  (*Id.* at 61.) Defendants appealed the judgment on September 19, 2013.  (Ex. D.)

On September 9, 2013, Mr. Barton filed a Notice of Lien in the *Amazon* Case for the $3.8 million required to satisfy the judgment in the Barton 581 Case.  (D.I. 550.)  Plaintiffs filed an Opposed Motion to Strike Notice of Lien.   (D.I. 551.)   Mr. Barton filed an Opposition to Plaintiffs' Opposed Motion to Strike.  (D.I. 555.)

### 2.      The Barton 259 Case

On July 28, 2011, Mr. Barton filed suit against RPost International, RMail, and RComm alleging RPost International, Mr. Khan, and Dr. Tomkow fraudulently transferred assets, including the Asserted Patents, to RMail and RComm.  (Ex. E.)   The complaint specifically identifies the '219 patent as an asset fraudulently transferred to RMail.  (*Id.* ¶ 9.)  The complaint also alleges that asset transfers from RPost to RComm "in or about February-April 2011" were fraudulent.  (*Id.* ¶ 10.)   The agreement assigning the '104, '389, '913, and '372 patents to RComm was executed during this time period, on March 21, 2011, and recorded on June 5, 2013

at Reel/Frame 030549/0838.  (*See* Ex. F, Patent Assignment Abstract of Title for U.S. Patent Nos. 8,161,104; 8,209,389; 8,224,913; and 7,966,372, recorded with the USPTO at Reel 030549 Frames 0838-0844.)  The recorded agreement is signed only by Mr. Khan (as an "Officer" of RPost International) and Dr. Tomkow (as an "Officer" of RComm) (*Id.*), the two owners adjudged to have committed fraud "with malice … and oppression" in the Barton 581 Case.  (Ex. G at 2-3.)  These transfers were allegedly made without notice and approval from the shareholders, and with the intent to defraud.  (Ex. E, ¶¶ 9-11.)  On August 19, 2011, Mr. Barton's counsel sent a letter to Plaintiffs' counsel notifying them that the patents Plaintiffs were asserting in this Court (*i.e.*, the Asserted Patents) were subject to these fraudulent conveyance claims.  (Ex. H at 1.)  Among other remedies, Mr. Barton requests a declaration that these asset transfers to RMail and RComm, including the transfer of ownership interest in the Asserted Patents, are null and void.  (Ex. E at 11, ¶¶ 4-5.)  The case management conference is set for October 28, 2013.  (Ex. C at 62.)

### 3.     The Bankruptcy Proceedings

With forewarning of an impending decision on damages, and allegedly seeking to avoid paying a judgment to Mr. Barton, Mr. Khan and Dr. Tomkow each filed for bankruptcy under

Chapter 13.  (Exs. I (Khan Bankruptcy Case) and J (Tomkow Bankruptcy Case).)  Both the

Trustee and Mr. Barton objected to those filings on numerous grounds.  (Exs. K-N.)[5]

Mr. Barton has also filed separate adversary proceedings in the Khan and Tomkow

Bankruptcy Cases reporting the rulings in the Barton 581 Case and reiterating the allegations in

the Barton 259 Case.  (Exs. O (Khan) and P (Tomkow).)  The objections include two surprising

valuations by Mr. Khan and Dr. Tomkow related to the RPost entities.  First, Mr. Khan and Dr.

Tomkow attributed a value of zero dollars to their shares in various RPost entities, including

RMail and RComm, the plaintiffs in this case.  (Ex. L at 5.)  However, evidence including a

settlement by RPost entities with Zix Corporation is alleged to contradict this valuation.  (Ex. Q.)

Second, Mr. Khan and Dr. Tomkow attributed a value of $100,000 to Mr. Barton's judgment, far

short of the over $4 million that was awarded by the Court.  (Ex. K at 3-4.)

### 4.    The Shareholder Derivative Actions

On July 29, 2013, Mr. Burke and the shareholders of RPost International ("Derivative

Action Shareholders") filed shareholder derivative actions in Mr. Khan and Dr. Tomkow's

Bankruptcy cases, making allegations similar to those in the Barton 259 Case regarding the

fraudulent transfer of RPosts' assets, as well as Mr. Khan and Dr. Tomkow's breach of fiduciary

---

[5]   A hearing regarding the Trustee's objections to Mr. Khan's and Dr. Tomkow's claims of
exemption in personal property has been scheduled for October 23, 2013.  (*Amazon* Case, D.I.
552, at 3.)  On September 19, 2013, Creditor/Adversary Plaintiff Barton filed motions to
convert Mr. Khan's and Dr. Tomkow's Chapter 13 bankruptcy cases to Chapter 7, and to
appoint a Chapter 7 trustee to manage Mr. Khan and Dr. Tomkow's assets.  (*Amazon* Case,
D.I. 552, at 4 & Exhibit D.)  Mr. Khan and Dr. Tomkow both filed oppositions to the Chapter
7 (*Id.* at 4 & Exhibit E) and also filed an objection to Mr. Barton's unsecured claim for
damages arising from the Barton 581 Case (*Id.* at 4 & Exhibit F.)  The motion, opposition, and
objections are set for hearing on November 5, 2013.  (*Id.*)

duties to the shareholders.  (Ex. R, ¶¶ 34-38 & 44-48.)[6]  The complaint specifically identifies the '219 patent as an asset fraudulently transferred to RMail.  (*Id.* at ¶ 36.)  The Derivative Action Shareholders seek, among other remedies: (1) a declaration that the asset transfers to RMail (including the '219 patent) are null and void (*Id.* at 31 ¶ 12); (2) the appointment of a receiver as to RPost and RComm to take charge of the transferred assets, the RMail patent lawsuits, and all proceeds therefrom (*Id.* at 31 ¶ 14); and (3) the imposition of a constructive trust over all of the asset transfers to RMail.  (*Id.* at 31 ¶ 15.)

### 5. Settlement Negotiations

On the eve of trial in the consolidated *Amazon* Case in which RPost had asserted the '219 and '372 patents against Docusign and Adobe, both counsel for Barton and counsel for the Derivative Action Shareholders sent letters to defendant Adobe demanding Adobe notify all interested parties, including Mr. Barton, Mr. Burke, and the Derivative Action Shareholders, before entering into settlement in the RPost lawsuit.  (*Amazon* Case, D.I. 540, Exhibits A and B.) During an August 1, 2013 hearing, this Court stayed the Docusign and Adobe cases for ninety (90) days, finding the California Actions "may have significant and substantive effects on the Plaintiffs' posture in these cases."  (*Amazon* Case, D.I. 545, at 2.)  On October 17, 2013, this Court extended the stay for an additional sixty (60) days.  (*Amazon* Case, D.I. 554.)

---

[6]  Mr. Khan and Dr. Tomkow moved to dismiss the Shareholder Derivative Actions.  (Khan Shareholder Derivative Action, D.I. 25; Tomkow Shareholder Derivative Action, D.I. 24.) The hearing on this motion is set for November 26, 2013.  (Khan Shareholder Derivative Action, D.I. 28; Tomkow Shareholder Derivative Action,  D.I. 26.)

## IV.    LEGAL ARGUMENT

### A.    Legal Standards

#### 1.    Dismissal for Lack of Standing Pursuant to Rule 12(b)(1)

"It is well settled that questions of standing can be raised at any time and are not foreclosed by, or subject to, statutes of limitation." *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009).   In *Lujan v. Defenders of Wildlife*, the United States Supreme Court emphasized that standing is a prerequisite to this Court's subject matter jurisdiction.  *Lujan*, 504 U.S. at 560-61 ("the core component of standing is an essential … part of the case-or-controversy requirement of Article III"); *see also Abraxis Bioscience, Inc.*, 625 F.3d at1363 ("Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue.") (citation omitted).   "The party invoking federal jurisdiction bears the burden of establishing the[] elements [of standing]."  *Lujan*, 504 U.S. at 561.   "'Failure to establish any one [of the elements of standing] deprives the federal courts of jurisdiction to hear the suit.'"  *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332-33 (5th Cir. 2002) (quoting *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002)).   "In examining a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which may be in dispute."  *MHL TEK, LLC v. GMC*, 622 F. Supp. 2d 400, 403 (E.D. Tex. 2009) (citation and quotation marks omitted).   "If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction," "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction."  *ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 640 (E.D. Tex. 2009) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

"In order to have standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to 35 U.S.C. §§ 100(d) and 281, or a licensee who holds 'all substantial rights' in the patent." *H.R. Techs., Inc. v. Astechnologies, Inc*., 275 F.3d 1378, 1384 (Fed. Cir. 2002) (citation omitted).  "[The Federal Circuit] has determined that in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." *Paradise Creations, Inc.*, 315 F.3d at 1309-10 (citing *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001)).  "If the original plaintiff lacked Article III initial standing, the suit *must* be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc.*, 625 F.3d at 1364 (emphasis added) (citation omitted).

### 2. Entry of a Stay

A district court has the inherent power to control its docket, including the power to stay proceedings. *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  Courts consider three factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay would simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 775, 778 (E.D. Tex. 2010) (granting stay).  Here, each of these factors weigh in favor of a stay.

Additionally, federal courts have utilized six factors in determining whether they should abstain in favor of a related parallel state court proceeding:

(1)     assumption by either state or federal court over a res;

(2)     relative inconvenience of the fora;

(3)     avoidance of piecemeal litigation;

(4)     order in which jurisdiction was obtained by the concurrent fora;

(5)     extent federal law provides the rules of decision on the merits; and

(6)     adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.

*Nationstar Mortg., LLC v. Knox*, 351 Fed. Appx. 844, 851 (5th Cir. 2009) (citing *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 395 (5th Cir. 2006)).   Although the abstention doctrine does not directly apply here, the factors are instructive in determining that this Court should grant a stay. *See Intermedics Infusaid, Inc. v. Regents of Univ. of Minnesota*, 804 F.2d 129 (Fed Cir. 1986) (considering abstention factors in affirming district court's grant of stay of declaratory judgment action pending state court decision that could moot the patent suit).

### B.    This Case Must Be Dismissed Because Plaintiffs Lack Standing

"A court may exercise jurisdiction *only if* a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc.*, 625 F.3d at 1364 (emphasis added) (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (There is a "long-standing principle that the jurisdiction of the Court depends upon the state of things at the time of the action brought.")) (internal citations and quotations omitted).   The Federal Circuit has mandated: "[i]f the original plaintiff lacked Article III initial standing, the suit *must* be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc*, 625 F.3d at 1364.   This Court lacks jurisdiction to hear this action for three reasons: (1) Plaintiffs did not have standing at the inception of this lawsuit; (2) if Plaintiffs in the California Actions are awarded an interest in the

asserted patents, this Court will lack jurisdiction because the plaintiffs in the California Actions have not consented to join this action; and (3) these jurisdictional defects cannot be cured by adding parties to this action.  Under the controlling law, this case "*must*" be dismissed.  *Id.*

*First,* this Court lacks subject matter jurisdiction because Plaintiffs have not "demonstrate[d] that [they] held enforceable title to the patent at the *inception of the lawsuit*." *Paradise Creations, Inc.*, 315 F.3d at 1309.  At the time this action was filed on August 24, 2012, the ownership of the Asserted Patents was in dispute.  In fact, the ownership of the Asserted Patents has been in dispute since at least as early as July 28, 2011, when the Barton 259 Case was originally filed.  (Ex. E.)  On August 19, 2011, counsel for Mr. Barton sent counsel for Plaintiffs a letter, advising them "that the patents/patent rights and the proceeds of the actions which [they] are prosecuting are the subject of the Fraudulent Conveyance lawsuit's claims." (Ex. H at 1.)  During that time, Plaintiffs were prosecuting the asserted '219 and '372 patents in this Court.  (*See, e.g.*, *Docusign* Case, D.I. 1.)  The plaintiffs in the California Actions assert Plaintiffs RMail and RComm do not legally own the Asserted Patents and request, among other remedies: (1) the Court declare the asset transfers to these Plaintiffs null and void (Ex. E at 11 ¶¶ 4, 5; Ex. R at 31 ¶ 12); and (2) a constructive trust over all of the asset transfers from RPost International to RMail and RComm, including the transfer of the Asserted Patents.  (Ex. E at 11 ¶¶ 8, 9.)  As a result of the ongoing pre-filing dispute over the ownership of the Asserted Patents, Plaintiffs cannot demonstrate they owned those patents when they filed this action.

In *Nolen v. Lufkin Industries, Inc*, the Federal Circuit dismissed a suit for lack of subject matter jurisdiction where the plaintiffs' patent infringement claims were conditioned on rescission of assignment agreements, a dispute which was governed by state law.  469 Fed. Appx. 857, 861-62 (Fed Cir 2012).  The Court found that "Plaintiffs ha[d] failed to make any

plausible allegations of ownership of the patents at issue *that [did] not first require judicial intervention*." *Nolen*, 469 Fed. at 862 (emphasis added).  Likewise, Plaintiffs in this case are unable to meet their burden to prove they were the owners of the Asserted Patents *at the inception of this lawsuit* unless and until the pending California Actions resolve in their favor. Allegedly without notice and approval from the shareholders and with intent to defraud, Mr. Khan and Dr. Tomkow, the two officers adjudged to have committed fraud against the shareholders, executed transfer agreements on behalf of RPost assigning: (1) the '219 patent to Plaintiff RMail (Ex. E, ¶¶ 9-11) and (2) the '104, '389,'913, and '372 patents to Plaintiff RComm. (*Id.*; Ex. G.)   A judge must *first* find these transfers were not fraudulent, and that Plaintiffs are the rightful owners of the Asserted Patents, in order to confer jurisdiction on this Court.  *See Paradise Creations, Inc.*, 315 F.3d at 1309 ("as a general matter, parties should possess rights *before* seeking to have them vindicated in court") (citation and quotation marks omitted) (emphasis added); *Ford*, 301 F.3d at 332-33 (5th Cir. 2002) ("Failure to establish any one [of the elements of standing] deprives the federal courts of jurisdiction to hear the suit.") (citation and quotation marks omitted).  Accordingly, this case *must* be dismissed for lack of subject matter jurisdiction.  *Abraxis Bioscience, Inc*, 625 F.3d at 1364; *see also Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 778 (Fed. Cir. 1996) (instructing a district court to dismiss a plaintiff's patent infringement claims because of the plaintiff's "inability to prove that it was the owner of the Intellectual Property at the time the suit was filed").

*Second*, this case should be dismissed because the alleged owners are not a party to this action, and "[a]n action for infringement *must* join as plaintiffs all co-owners." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467-68 (Fed. Cir. 1998) (emphasis added).  The Federal Circuit has held "one co-owner has the right to impede the other co-owner's ability to sue

infringers by refusing to voluntarily join in such a suit." *Id.* at 1468 (quotation marks and citation omitted).   Here, nonparties Mr. Barton and the Derivative Action Shareholders (on behalf of RPost International) claim an ownership interest in the asserted patents, yet they have not  consented to join as plaintiffs in this suit.  Instead, they have requested the appointment of a receiver as to RPost and RComm "to take charge of … the [ ] Patent Lawsuits and all proceeds therefrom."  (Ex. R at 31 ¶ 14; Ex. E at 11 ¶ 7.)  As the Federal Circuit mandated: this Court "*must* order dismissal of th[e] suit" because "[Plaintiffs'] complaint lack[ed] the participation of a co-owner of the patent."  *Ethicon,* 135 F.3d at 1468.

*Finally*, Plaintiffs cannot cure these defects by adding parties to this action.  The Federal Circuit has held "[i]f the original plaintiff lacked Article III initial standing, the suit *must* be dismissed, and the jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc*, 625 F.3d at 1364.  This suit "*must*" be dismissed.  *Id.*

### C.    In the Alternative, This Case Should Be Stayed Pending Resolution of the California Actions

As this Court recognized in staying Plaintiffs' other infringement actions, the California Actions "may have significant and substantive effects on the Plaintiffs' posture in these cases" and "the consequences and foreseeable ramifications of these identified litigations in California create a material risk that the time and resources of both the parties and this Court could be wasted if such continue to move forward as currently scheduled." (*Amazon* Case, D.I. 545.)  At the very least, the Court has rightfully recognized the allegations in the California Actions impede Plaintiffs' ability to demonstrate standing to litigate the *Amazon* Case.  The same is true here and accordingly, this case should be stayed if it is not dismissed.  All three factors support entry of a stay.  First, a stay will not unduly prejudice Plaintiffs.  Instead, failure to stay this case unduly prejudices Defendants by subjecting them to multiple potential suits, and will result in

wasted time and resources by the Court and the parties.  Defendants are also forced to choose between foregoing settlement discussions, or engaging in settlement discussions and risking legal action by the Plaintiffs in the California Actions.  Second, if the California Actions resolve in favor of Plaintiffs, this case becomes moot and Defendants will be forced to re-litigate the case. Finally, this case is in its earliest stages.  The Court should stay this case.

### 1. Entry of a Stay Will Not Unduly Prejudice Plaintiffs But Will Result in Prejudice to Defendants

A stay of this action will not unduly prejudice Plaintiffs, who are required to demonstrate standing as a prerequisite to this Court's jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. at 561.  The ownership disputes in the California Actions are governed by state law and unlike this case, the Barton 259 Case is well into discovery.  Allowing Plaintiffs to first litigate the state law ownership issues in the California Actions will streamline this case and avoid unnecessary costs and efforts on behalf of all of the parties, including Plaintiffs.

On the other hand, failure to stay this action will result in undue prejudice to Defendants. The true patent owner is an indispensable party "not only to give jurisdiction …, but also … to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions."  *Intellectual Property Dev., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001) (citing *Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926)).  If the California Action plaintiffs are successful, Defendants could be subject to multiple suits.  The California Actions have also placed a chilling effect on Constant Contact's ability to settle this case, as the California Action plaintiffs have warned

other defendants sued by RPost about settling with Plaintiffs.[7]  (*Amazon* Case, D.I. 540.)  Failure to stay this action pending resolution of the ownership dispute requires Defendants to choose between foregoing settlement discussions to resolve this matter, or subjecting themselves to lawsuits against the plaintiffs in the California Actions.

### 2. The California Actions Will Either Moot This Case or Simplify the Issues

A stay will reduce the expense and burden on the parties and the Court because the California Actions will either moot or simplify the issues in this case.  This case will become moot if: (a) the California Actions do not resolve in Plaintiffs' favor, or (b) Mr. Barton is unable to collect his judgment in the Barton 581 Case, and the Court finds it was due to fraudulent transfers of the Asserted Patents.  (*see* Ex. C at 60.)  If the California Actions are resolved in favor of Plaintiffs, this case will be simplified because the standing issues will be resolved.  Absent a stay, Plaintiffs have to litigate the ownership issues in two districts.

Meanwhile, patent litigation is extremely expensive.  Fed. Trade Comm'n, The Evolving IP Marketplace: Aligning Patent Notice and Remedies with Competition, at 78 (March 2011), *available at* http://www.ftc.gov/os/2011/03/110307patentreport.pdf.  Constant Contact will be forced to spend hundreds of thousands of dollars litigating a case that may be mooted by the California Actions – money that would be better spent on research and development, or jobs. *See id.* at 79 (an increase in expected costs due to infringement claims "reduc[es] firms' incentives to pursue innovative projects, while the associated expenses cause firms to reduce

---

[7]  Constant Contact and its customers have moved to sever and stay the lawsuit as to Constant Contact's customers and business partners, in part because Constant Contact, the sole defendant accused of making the accused product, is indemnifying its customers.  (*See* D.I. 18, 22, 25, 27, 38, 46, & 59.)

spending on R&D") (citation omitted).  If the California Actions resolve favorably for Plaintiffs, the only "prejudice" would be a delay in any payment received from Constant Contact (by settlement or judgment) – a payment that will increase over time if Plaintiffs' theory of the case is correct.  Moreover, the lack of direct competition between Constant Contact, an email marketing company, and Plaintiffs who purportedly sell email authentication technology, also favors a stay, as Plaintiffs can be made whole by money remedies.  *See Spa Syspatronic, AG v. VeriFone, Inc.*, NO. 2:07-CV-416, 2008 U.S. Dist. LEXIS 34223, at *7 (E.D. Tex. Apr. 24, 2008) ("[T]he parties are … not direct competitors in the marketplace, and therefore a stay is also unlikely to directly prejudice Spa's standing in the market during the remainder of the [asserted] patent's life, making any harm from delay even less acute.")  Further, this district is extremely busy, with 1,248 cases filed in 2012.   *See* https://lexmachina.com/members/ courts?filter=Patent (last visited Oct. 17, 2013).  This Court should not expend resources on cases which may lack standing.  Staying this action is the most effective way to achieve judicial economy.

### 3.      Unlike the California Actions, This Case Has Just Begun

This case is in its earliest stages.  The last-served defendant, Sysco Corp., was just recently served and is scheduled to respond to the Amended Complaint on October 25th, 2013. (*see* D.I. 58.)  This case has not yet been set for scheduling conference.  This factor favors a stay.

### 4.      This Court Should Abstain from Exercising Jurisdiction Until the Ownership Issues Are Resolved in the California Actions

The Federal Circuit has found staying a federal action to be "extremely prudent" where a state action could moot the federal action.  *Intermedics Infusaid, Inc.*, 804 F.2d at 135.  In *Intermedics*, the Federal Circuit considered abstention factors in affirming a district court's entry of a stay in a declaratory judgment action pending resolution of a state court contract dispute

which could moot the declaratory judgment action.  *Id.* at 134-35.  While the abstention doctrine was not directly applicable to the declaratory judgment action, the Court "believe[d] [a] similar analysis … is appropriate in the context of stay/dismissal of a declaratory judgment action once the district court accepts jurisdiction."  *Id.* at 135.  The Court found the following five factors persuasive.  First, the district court proceedings had just been instituted whereas the state suit was advanced at the time the stays were sought.  *Id.* at 134.  Second, a principal defense in the state action was that Intermedics had a royalty-free license, and a judgment to that effect could moot the patent suit.  *Id.* at 135.  Third, the state court was not called on to resolve matters of federal law, namely patent invalidity.  *Id.*  Fourth, "the events which may create a bar to litigating patent validity had already occurred -- if there is a bar -- at the time Intermedics filed this suit."  *Id.*  Finally, the Court found no possibility of prejudice to Intermedics by reason of duplicative or piecemeal litigation because the patent validity issue would be either barred or mooted by the state judgment, or litigated in the district court.  *Id.*

Here too, the abstention factors weigh in favor of granting a stay.  First, as discussed above, this proceeding has just begun whereas the California Actions have been ongoing since 2010.  Second, a principal allegation in the California Actions is that the transfers of the Asserted Patents to RMail and RComm were fraudulent, "and a judgment to that effect could well moot the patent suit."  *Intermedics*, at 804 F.2d at 135.  Third, the state court is not called upon to resolve matters of patent infringement, but rather ownership which is a matter of state law.  Fourth, "the events which may create a bar to litigating patent [infringement] had already occurred -- if there is a bar -- at the time [Plaintiffs] filed this suit" in that Plaintiffs lacked standing at the inception of this action if the transfers are adjudged to be fraudulent.  *Id.*

Finally, as discussed above, there is no prejudice to Plaintiffs, because the patent infringement action will either be: (a) barred or mooted by the California Actions regarding patent ownership, or (b) litigated in this Court if Plaintiffs prevail in the California Actions. Abstention is appropriate in this case, because "a federal constitutional issue might be avoided by a state court decision." *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 216 (E.D.N.Y. 1994) (granting motion to stay infringement action pending outcome of a California state action regarding ownership of the patent at issue); *see also Pirkle v. Ogontz Controls Co.*, 852 F.2d 1293, 1988 WL 60737, at * 2 (Fed Cir. 1988) (affirming grant of stay stating "[t]he Pennsylvania state action was filed three years before the federal action, the issue of ownership turns on state law, and if decided adversely to Pirkle could be dispositive of all or substantially all of the issues raised in the federal action."); *Moss v. Moss Tubes, Inc.,* No. 96 CV 1407, 1997 WL 727611, at *3-4 (N.D.N.Y. Aug. 21, 1997) (staying patent infringement action pending the resolution of a divorce case which would determine ownership of patents).  The Court should stay this case if it does not dismiss it without prejudice for lack of standing.

## V.   CONCLUSION

WHEREFORE Defendants respectfully request the Court dismiss without prejudice the Plaintiffs' Amended Complaint or, in the alternative, stay this action pending resolution of the California Actions, and for any other relief the Court deems just.

Dated: October 23, 2013                    Respectfully submitted,


                                           /s/ *Richard G. Frenkel*
                                           Michael E. Jones
                                           Texas Bar No. 10929400
                                           POTTER MINTON
                                           110 N. College
                                           Tyler, Texas 75702
                                           Telephone: (903) 597-8311

Facsimile:  (903) 593-0846
Email:  mikejones@potterminton.com

**Of Counsel:**

Maximilian A. Grant
**LATHAM & WATKINS LLP**
555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201
max.grant@lw.com

Richard G. Frenkel
Yasamin Parsafar
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, CA  94025-1008
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600
rick.frenkel@lw.com
yasamin.parsafar@lw.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on the 23rd day of October, 2013.

/s/ *Richard G. Frenkel*
Richard G. Frenkel

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties met and conferred pursuant to Local Rule CV-7(i) via telephone conversation on October 21, 2013.  Plaintiffs oppose this motion.

/s/ *Richard G. Frenkel*
Richard G. Frenkel